[No. 16129.    Department Two.    November 29, 1920.]

LOUIS KNUTSON, *Appellant*, v. PYBUS BAY FISH & PACKING COMPANY, *Respondent*.[1]

MASTER AND SERVANT (110-112)—INJURIES TO SERVANT—CONTRIBUTORY NEGLIGENCE — KNOWN DANGERS — PRECAUTIONS AGAINST.  One employed to fish for defendant, who was injured when he undertook to stoop under a fish conveyor chain, on his way from a float to the dock, is guilty of contributory negligence, as a matter of law, where he was familiar with the dangers, which were greater at low tide, and which were open and actually known to him.

Appeal from a judgment of the superior court for King county, Allen, J., entered April 29, 1920, in favor of the defendant, notwithstanding the verdict of a jury rendered in favor of the plaintiff, in an action for personal injuries.  Affirmed.

*Lyons & Orton*, for appellant.

*Bogle, Merritt & Bogle*, for respondent.

[1]Reported in 193 Pac. 569.

TOLMAN, J.—In the summer of 1919, appellant, a fisherman by occupation, with his boat and crew, was employed under a contract with respondent to fish throughout the season and deliver his catch at respondent's cannery on Pybus Bay, Alaska, at certain prices fixed by the contract. Respondent maintained a float alongside its dock, from which a fish conveyor or chain elevator ran up and into the cannery, and appellant and others similarly employed brought their boats loaded with fish to this float. The fish were transferred and counted into a hopper, from which they entered the conveyor, and were elevated to the cannery. The float was so constructed and fastened as to rise and fall with the tide. Beside the elevator was a cleated gangway by means of which the men employed on the float passed up and down from the float to the dock and returned. At the dock level the gangway connected with a narrow board walk, without railing or guard along its outer edge, which passed along beside the cannery underneath the upper end of the elevator. The elevator was stationary in height at the upper, or cannery end, but as the lower end rested upon the float, it would rise and fall with the tide, thus affecting the clearance space between the board walk and the elevator above it. The elevator consisted of an endless chain running in a chute or compartment, with cups or scoops which caught and carried the fish up into the cannery, the returning chain being exposed below the chute, and there was nothing to protect one from contact with the returning chain or its cups, where it passed above the board walk. Probably at high tide there was no danger to one passing under the chain at this point, but at lower stages of the tide not only was the elevator lower, but the chain was slackened by the subsidence of the tide,

and one could not pass under the chain without stooping more or less. There is some dispute in the testimony as to whether or not there was any other practical way to go from the dock to the float, or from the float to the dock, and for present purposes we will assume that this was the only practical route provided.

On the evening of July 30, 1919, appellant brought his boat to the float, unloaded his fish, and then, according to custom, moved his boat around to the end of the cannery and there made it fast. He then climbed up a ladder situated near where the boats were commonly moored, onto the dock, where he remained with no particular occupation for some forty-five minutes. Observing another boat unloading at the float, which appeared to have made a more successful catch than his own, he determined to go down to the float for the twofold purpose of inquiring where the fish then being unloaded had been caught, and also to ascertain whether the checker or tallyman had sent a report of his own load of fish to the office, so as to enable him to get a receipt therefor. In going to the float, he travelled along the board walk, stooped down and passed under the elevator, and thence descended the gangway to the float. After remaining there some thirty minutes, he started to return by the same route, preceded immediately by another, pursuing the same course. Coming to the point where he must pass under the elevator, he saw the man who preceded him pass through, and stooping down as low as he could, without getting on his hands and knees in the slime which dripped from the elevator, he attempted to pass under, when the chain or its projections caught in his clothing, and threw him off the unguarded walk to the float below, a fall of some twenty-

four feet, and he thus received the injuries complained of.

The cause was submitted to a jury, which found a verdict in appellant's favor, and a motion for judgment notwithstanding the verdict having been interposed and granted by the trial court, a judgment of dismissal followed, from which this appeal is taken.

The errors assigned raise only the question of whether or not the court erred in granting the motion, and refusing to enter judgment on the verdict.

The trial court appears to have been of the opinion that appellant was guilty of contributory negligence as a matter of law, and hence not entitled to recover, even though respondent was shown to have been negligent. To intelligently discuss the question thus presented, it will be necessary to set forth the evidence a little more fully on some points than is shown by the foregoing statement.

It appears clearly from appellant's own testimony that he was fully conversant with the whole situation as it existed at and before the time of the accident. He had been delivering fish at the cannery for some weeks, and knew all about the manner in which the elevator was constructed and operated, and was, of course, familiar with the ebb and flow of the tide. When asked on direct examination as to the number of times he had gone by this route from the float to the cannery, he testified: "Oh, some days I went up there many times a day." He had gone down from the dock to the float about half an hour before the time of the accident, knew of the slime which constantly dripped on the walk when fish were being carried up by the elevator, knew that the elevator was then in operation, and that the chain was slack, as evidenced by his having stooped to avoid it, and the only

attempted excuse for his failure to avoid contact with the chain is that he had never seen the tide that low before, and that "it was starting to get a little dark"; but there is no suggestion that he could not both see and hear the chain in operation.

The only conclusion to be drawn from this testimony is that "familiarity had bred contempt," and that though he knew full well of the danger, he carelessly and negligently brought himself into contact with the moving chain. Here is no question of latent or concealed danger. It was open, obvious, and actually known to appellant at the time, as conclusively shown by his stooping, hence reasonable minds may not differ in their conclusions. The act of appellant in this case is quite similar to the act of appellant in the case of *Simpson v. Brown,* 107 Wash. 366, 182 Pac. 88, and while that case was tried to the court, we have no doubt the same conclusion would have been reached had it been a question of taking the case from the jury.

The judgment appealed from is affirmed.

HOLCOMB, C. J., MOUNT, MITCHELL, and MAIN, JJ., concur.